IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PATHGENICS, INC., )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. _____
)
NOVABAY PHARMACEUTICALS, INC., )
)
Defendant. )
)

## COMPLAINT

In this action, plaintiff Pathogenics, Inc. (hereinafter "Pathogenics" or "Plaintiff") seeks to enjoin an ongoing breach of contract and compel specific performance by defendant NovaBay Pharmaceuticals, Inc. (hereinafter "NovaBay" or "Defendant") under an agreement dated April 7, 2009, to recover compensatory damages for a breach of contract and negligent concealment, and to recover punitive and multiple damages for intentional concealment, together with attorney fees, costs and interest on all amounts due and owing (Pathogenics and Novabay each individually and collectively referred hereinafter to as the "Party" or the "Parties").

### The Parties

1.  Plaintiff Pathogenics is a corporation organized and existing under the laws of the State of Delaware. It has a usual place of business at 28 Old Coach Road, Cohasset, Massachusetts 02025.

2. Defendant NovaBay is a corporation organized and existing under the laws of the State of California. It has a usual place of business at 5980 Horton Street, Suite 550, Emeryville, California 94608.

## Jurisdiction and Venue

3. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

4. Venue is proper in this Court based upon 28 U.S.C. 1391 and M.G.L. c. 223A, § 3, as NovaBay has purposefully availed itself of the privilege of conducting activities within the Commonwealth, thus invoking the benefits and protections of its laws, and the causes of action arise out of NovaBay's transaction of business, acts or omissions in the Commonwealth.

## Facts

5. On or about November 16, 2008, NovaBay, by Jack O'Reilly ("Mr. O'Reilly"), its Senior Vice-President, executed a non-circumvention agreement (hereinafter the "Non-Circumvention Agreement") with Pathogenics in connection with the Parties engaging in discussions with respect to a potential transaction relating to an acquisition, license, merger, investment, joint venture or other business between the Parties (hereinafter the "Transaction").

6. The Non-Circumvention Agreement, which was supported by valid consideration, required NovaBay to obtain the written consent of Pathogenics before directly or indirectly entering into any agreement after the effective date, including but not limited to any license, sponsored research, consulting, joint venture or other

2

contractual relationship with Dr. Markus Nagl and Dr. Waldemar Gottardi (individually and collectively hereinafter the "Researchers"). NovaBay further agreed not to take any action which would adversely affect or otherwise hinder Pathogenics' contractual relations with the Researchers, and that any purported agreement between NovaBay and the Researchers after the effective date thereof, without the written consent of Pathogenics, shall be null and void and of no effect.

7. The expiration of the Non-Circumvention Agreement would occur upon the earlier of the effective date of a Transaction or the fifth (5th) anniversary of the effective date of the Non-Circumvention Agreement.

8. The Non-Circumvention Agreement contained a provision whereby each Party consented and submitted to the jurisdiction of any state or federal court sitting in the Commonwealth of Massachusetts, City of Boston, and County of Suffolk in connection with any dispute arising out of or relating to the Non-Circumvention Agreement. This provision further provided that each Party waived any objection to the laying of venue in such courts and any claim that any such action has been brought in an inconvenient forum.

9. On or about April 7, 2009, NovaBay, by Ramin "Ron" Najafi, Ph.D. (hereinafter "Dr. Najafi"), its Chairman, Chief Executive Officer and President, executed an agreement with Pathogenics in connection with the termination of the Non-Circumvention Agreement (hereinafter the "Termination Agreement"). The Termination Agreement, which was supported by valid consideration, required NovaBay to issue and deliver to Pathogenics two-hundred and fifty-thousand (250,000) shares of NovaBay Common Stock (hereinafter the "Shares"). On April 7, 2009, the closing price of

NovaBay's common stock on the American Stock Exchange was $3.03 per share. Accordingly, Pathogenics 250,000 Shares had a market value of $757,500.00 and accounted for a total of approximately 1.1% of NovaBay's 21.9 million issued and outstanding shares of common stock.

10. The Termination Agreement provided that the issuance and delivery of the Shares was contingent upon and subject to certain conditions. One such condition contained in the Termination Agreement was a provision whereby NovaBay agreed that, in the event that NovaBay registers the offer and sale of its common stock on a Form S-1 or Form S-3 registration statement, NovaBay will use its commercially reasonable efforts to register the offer and sale of the Shares on such registration statement. This provision is commonly referred to as "piggyback registration rights" (hereinafter "Piggyback Registration Rights") *in connection with the sale or acquisition of shares of common stock*. This provision also provided the further condition that the Chief Financial Officer of NovaBay shall determine that the registration of the offer and sale of the Shares will not adversely impact NovaBay or its financing plans.

11. The Parties orally agreed that Pathogenics terminate its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement. Accordingly, on April 7, 2009, Pathogenics unilaterally terminated its two existing patent license agreements concerning the uses of N-Chlorotaurine pharmaceutical compounds between itself and the Researchers.

12. On April 22, 2009, NovaBay announced in an official press release that it had entered into an exclusive agreement with the Researchers to advance the

4

development of NovaBay's pharmaceutical compounds. In addition to the research agreement, NovaBay obtained an exclusive license to a broad portfolio of intellectual property covering the uses of N-Chlorotaurine compounds.

13. On June 9, 2009, NovaBay filed a Form S-3 registration statement under the securities act of 1933 with the United States Securities and Exchange Commission (hereinfeter the "Registration Statement") utilizing a "shelf" registration process. The Registration Statement does not register the offer and sale of the Pathogenics Shares.

14. The Registration Statement includes a prospectus (hereinafter the "Prospectus"), in which NovaBay states that under this shelf Registration Statement, NovaBay may, from time to time, sell any combination of the securities referred to therein in one or more offerings for total gross proceeds of up to $20,000,000.00. On the day the Registration Statement was filed, June 9, 2009, the closing price of NovaBay's common stock on the American Stock Exchange was $2.30 per share. Accordingly, Pathogenics' 250,000 Shares had a market value of $575,000.00 and accounted for approximately 2.9% of the proposed $20,000,000.00 worth of shares for offer and sale under the Registration Statement, and approximately 0.8% when considered in combination together with NovaBay's 21.9 million issued and outstanding shares of common stock.

15. On or about June 12, 2009, Frederic P. Zotos (hereinafter "Mr. Zotos"), the President and Chief Executive Officer of Pathogenics discovered by his own investigation of publicly available records filed with the United States Securities and Exchange Commission that NovaBay had filed the Registration Statement.

16. On Monday, June 15, 2009, Mr. Zotos contacted Thomas J. Paulson (hereinafter "Mr. Paulson"), the Chief Financial Officer and Treasurer of NovaBay by e-mail and inquired of him regarding the registration of the offer and sale of the Pathogenics Shares as part of the Registration Statement in full accordance with Pathogenics Piggyback Registration Rights under the terms of the Termination Agreement. Mr. Zotos followed up this e-mail later that day by leaving a voicemail message for Mr. Paulson on his office voicemail, the content of which was similar to the e-mail it referenced.

17. Having received no reply to his first e-mail and voicemail inquiries to Mr. Paulson, on Wednesday, June 17, 2009 Mr. Zotos followed up with a second e-mail inquiry to Mr. Paulson, the content of which was similar to the e-mail of June 15, 2009, and included this earlier e-mail inquiry as an attachment.

18. Having received no reply to his previous two e-mails and first voicemail inquiries to Mr. Paulson, on Thursday, June 18, 2009 Mr. Zotos followed up with a second voicemail inquiry to Mr. Paulson, the content of which was similar to the voicemail inquiry of June 15, 2009, and referenced his previous e-mail and voicemail inquiries.

19. Having received no reply to his previous two e-mails and two voicemail inquiries to Mr. Paulson, on Friday, June 19, 2009 Mr. Zotos followed up with a third e-mail inquiry to Mr. Paulson, the content of which was similar to the voicemail inquiry of June 15, 2009, and included his earlier e-mail inquiries as attachments.

20. Having received no reply to his previous three e-mails and two voicemail inquiries to Mr. Paulson, on Monday, June 22, 2009 Mr. Zotos followed up with a fourth

e-mail inquiry, this time to Dr. Najafi, the content of which was similar to the e-mail inquiry of June 19, 2009, and included his earlier e-mail inquiries to Mr. Paulson as attachments and referenced his earlier voicemails to Mr. Paulson. Later that day, Mr. Zotos received a reply from to this inquiry from Darcey Twyman, Executive Assistant to Dr. Najafi, explaining that Dr. Najafi was traveling in Europe out of his California office, and that she would bring this matter to his attention.

21. On the following day, Tuesday, June 23, 2009, Mr. Paulson finally responded by e-mail to Mr. Zotos' repeated inquiries. In this e-mail, Mr. Paulson stated that NovaBay had unilaterally decided not to include the Pathogenics Shares in the S-3 Registration Statement. Mr. Paulson stated rationale was that registering the Pathogenics Shares at this time could potentially have a detrimental effect on any fund raising activities that NovaBay may consider in the future. Additional stated considerations included considering the large size of the Pathogenics' block of Shares, the rather thin trading volume of NovaBay's shares and the fact that the trading restrictions on the Pathogenics Shares would automatically be lifted after a six-month holding period.

22. At no time prior to the June 23, 2009 e-mail from Mr. Paulson did NovaBay inform Pathogenics it intended to either file an S-3 registration statement, or had actually filed the S-3 Registration Statement. At no time prior to this e-mail did NovaBay inform Pathogenics that it had absolutely no intention of using its commercially reasonable efforts to register the offer and sale of the Shares on a registration statement, thereby denying Pathogenics' Piggyback Registration Rights under the terms of the Termination Agreement.

23. On the following day, Wednesday, June 24, 2009, Mr. Zotos responded to Mr. Paulson's e-mail of June 23, 2009. In this e-mail, Mr. Zotos stated that exclusion of the Pathogenics Shares from the S-3 Registration Statement violated both the spirit and the letter of [Pathogenics' Piggyback Registration Rights under] the Termination Agreement. Mr. Zotos offered Mr. Paulson a compromise to register only 50,000 of Pathogenics' Shares. On the day of that offer, June 24, 2009, the closing price of NovaBay's common stock on the American Stock Exchange was $2.01 per share. Accordingly, the proposed 50,000 Pathogenics Shares had a market value of $100,500.00 and accounted for approximately 0.5% of the proposed $20,000,000.00 worth of shares for offer and sale under the Registration Statement, and approximately 0.1% when considered in combination together with NovaBay's 21.9 million issued and outstanding shares of common stock.

24. On the following day, Thursday, June 25, 2009, Mr. Paulson responded to Mr. Zotos' e-mail of June 24, 2009. In this e-mail, Mr. Paulson categorically rejected Mr. Zotos' proposed compromise as unacceptable. Mr. Paulson stated that it would be detrimental to the offering and not in the best interest of NovaBay to complicate the filing [Registration Statement] by including any of the Pathogenics Shares.

## COUNT I

### Breach of Contract

25.     Plaintiff Pathogenics repeats and incorporates by reference the allegations in paragraphs 1 through 24 as if fully set forth herein.

26.     The Termination Agreement constitutes a contract between Pathogenics and NovaBay, pursuant to which in the event that NovaBay registers the offer and sale of its common stock on a Form S-3 registration statement, NovaBay is obligated to use its commercially reasonable efforts to register the offer and sale of the Shares on such registration statement.

27.     NovaBay's filing of its Form S-3 Registration Statement under the securities act of 1933 with the United States Securities and Exchange Commission on June 9, 2009 and failure to register the offer and sale of the Pathogenics Shares on the Registration Statement breached its obligation to use its commercially reasonable efforts to register the offer and sale of the Pathogenics Shares on the Registration Statement.

28.     Pathogenics has made repeated demands to register the offer and sale of the Pathogenics Shares on the S-3 Registration Statement, and defendant NovaBay has repeatedly refused to do so.

29.     As a result of its failure to register the offer and sale of the Pathogenics Shares on the S-3 Registration Statement under the Termination Agreement, NovaBay has breached this contract, causing Pathogenics irreparable harm, and unless the contract is specifically enforced, is likely to cause Pathogenics further irreparable harm.

30.     Pathogenics has no adequate remedy at law.

## **COUNT II**

### **Breach of Contract**

31. Plaintiff Pathogenics repeats and incorporates by reference the allegations in paragraphs 1 through 30 as if fully set forth herein.

32. The Termination Agreement constitutes a contract between Pathogenics and NovaBay, pursuant to which in the event that NovaBay registers the offer and sale of its common stock on a Form S-3 registration statement, NovaBay is obligated to use its commercially reasonable efforts to register the offer and sale of the Shares on such registration statement.

33. NovaBay's filing of its Form S-3 Registration Statement under the securities act of 1933 with the United States Securities and Exchange Commission on June 9, 2009 and failure to register the offer and sale of the Pathogenics Shares on the Registration Statement breached its obligation to use its commercially reasonable efforts to register the offer and sale of the Pathogenics Shares on the Registration Statement.

34. Pathogenics has made repeated demands to register the offer and sale of the Pathogenics Shares on the S-3 Registration Statement, and defendant NovaBay has repeatedly refused to do so.

35. As a result of its failure to register the offer and sale of the Pathogenics Shares on the S-3 Registration Statement under the Termination Agreement, NovaBay has breached this contract, causing Pathogenics irreparable harm.

36. Such breach by NovaBay will continue unless NovaBay is enjoined from proceeding to register the offer and sale of its common stock on either a Form S-1 or S-3

registration statement without also registering the offer and sale of the Pathogenics Shares thereon.

37. Pathogenics has no adequate remedy at law.

## COUNT III

### Breach of Contract

38. Plaintiff Pathogenics repeats and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

39. The Termination Agreement constitutes a contract between Pathogenics and NovaBay, pursuant to which in the event that NovaBay registers the offer and sale of its common stock on a Form S-3 registration statement, NovaBay is obligated to use its commercially reasonable efforts to register the offer and sale of the Shares on such registration statement.

40. NovaBay's filing of its Form S-3 Registration Statement under the securities act of 1933 with the United States Securities and Exchange Commission on June 9, 2009 and failure to register the offer and sale of the Pathogenics Shares on the Registration Statement breached its obligation to use its commercially reasonable efforts to register the offer and sale of the Pathogenics Shares on the Registration Statement.

41. Pathogenics has made repeated demands to register the offer and sale of the Pathogenics Shares on the S-3 Registration Statement, and defendant NovaBay has repeatedly refused to do so.

42. As a result of its failure to register the offer and sale of the Pathogenics Shares on the S-3 Registration Statement under the Termination Agreement, NovaBay has breached this contract, causing damages to Pathogenics.

11

## COUNT IV

### Breach of Contract

43. Plaintiff Pathogenics repeats and incorporates by reference the allegations in paragraphs 1 through 42 as if fully set forth herein.

44. The Parties oral agreement that Pathogenics terminate its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement constitutes a contract between Pathogenics and NovaBay, pursuant to which in the event that NovaBay registers the offer and sale of its common stock on a Form S-3 registration statement, NovaBay is obligated to use its commercially reasonable efforts to register the offer and sale of the Shares on such registration statement.

45. NovaBay's filing of its Form S-3 Registration Statement under the securities act of 1933 with the United States Securities and Exchange Commission on June 9, 2009 and failure to register the offer and sale of the Pathogenics Shares on the Registration Statement breached its obligation to use its commercially reasonable efforts to register the offer and sale of the Pathogenics Shares on the Registration Statement.

46. Pathogenics has made repeated demands to register the offer and sale of the Pathogenics Shares on the S-3 Registration Statement, and defendant NovaBay has repeatedly refused to do so.

47. As a result of its failure to register the offer and sale of the Pathogenics Shares on the S-3 Registration Statement under the Termination Agreement, NovaBay has breached this contract, causing damages to Pathogenics.

## COUNT V

### Negligent Concealment

48.   Plaintiff Pathogenics repeats and incorporates by reference the allegations in paragraphs 1 through 47 as if fully set forth herein.

49.   NovaBay's failure to inform Pathogenics on or before it entered into the Termination Agreement on April 7, 2009 that it intended to file an S-3 registration statement and that it had absolutely no intention of using its commercially reasonable efforts to register the offer and sale of the Shares on the registration statement, constitutes concealment of a material fact.

50.   NovaBay had a duty to disclose to Pathogenics this material fact as part of its implied duty of good faith and fair dealing when it negotiated the Termination Agreement, and where it had special knowledge of this material fact to which Pathogenics had no access.

51.   NovaBay intended to induce Pathogenics reliance on this concealment so that Pathogenics would enter into the Termination Agreement and terminate its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement.

52.   Pathogenics justifiably and actually relied on NovaBay's concealment and entered into the Termination Agreement and terminated its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement.

53. As a result of its negligent concealment, NovaBay has caused damages to Pathogenics.

## COUNT VI

### Intentional Concealment

54. Plaintiff Pathogenics repeats and incorporates by reference the allegations in paragraphs 1 through 53 as if fully set forth herein.

55. NovaBay's failure to inform Pathogenics on or before it entered into the Termination Agreement on April 7, 2009 that it intended to file an S-3 registration statement and that it had absolutely no intention of using its commercially reasonable efforts to register the offer and sale of the Shares on the registration statement, constitutes concealment of a material fact.

56. NovaBay knowingly, willfully and in reckless disregard of the possible results intended this concealment to deceive Pathogenics and induce its reliance on this concealment so that Pathogenics would enter into the Termination Agreement and terminate its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement.

57. Pathogenics justifiably and actually relied on NovaBay's concealment and entered into the Termination Agreement and terminated its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement.

58. As a result of its intentional concealment, NovaBay has caused damages to Pathogenics.

## COUNT VII

### Unfair or Deceptive Act or Practice

59. Plaintiff Pathogenics repeats and incorporates by reference the allegations in paragraphs 1 through 58 as if fully set forth herein.

60. NovaBay's failure to inform Pathogenics on or before it entered into the Termination Agreement on April 7, 2009 that it intended to file an S-3 registration statement and that it had absolutely no intention of using its commercially reasonable efforts to register the offer and sale of the Shares on the registration statement, thereby denying Pathogenics' Piggyback Registration Rights under the terms of the Termination Agreement, constitutes concealment of a material fact.

61. NovaBay knowingly and willfully, or in reckless disregard of the possible results intended this concealment to deceive Pathogenics and induce its reliance on this concealment so that Pathogenics would enter into the Termination Agreement and terminate its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement.

62. Pathogenics justifiably and actually relied on NovaBay's concealment and entered into the Termination Agreement and terminated its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement.

63. By virtue of its intentional concealment, NovaBay knowingly and willfully, or in reckless disregard for truth or falsity violated M.G.L. ch 93A, §2.

## COUNT VIII

### Intentional Concealment

64. Plaintiff Pathogenics repeats and incorporates by reference the allegations in paragraphs 1 through 63 as if fully set forth herein.

65. NovaBay's failure to inform Pathogenics on or before it entered into the Termination Agreement on April 7, 2009 that it intended to file an S-3 registration statement and that it had absolutely no intention of using its commercially reasonable efforts to register the offer and sale of the Shares on the registration statement, thereby denying Pathogenics' Piggyback Registration Rights under the terms of the Termination Agreement, constitutes concealment of a material fact.

66. NovaBay knowingly, willfully and in reckless disregard of the possible results intended this concealment to deceive Pathogenics and induce its reliance on this concealment so that Pathogenics would enter into the Termination Agreement and terminate its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement.

67. Pathogenics justifiably and actually relied on NovaBay's concealment and entered into the Termination Agreement and terminated its two existing patent license agreements concerning the pharmaceutical compound N-Chlorotaurine between itself and the Researchers commensurate with the execution of the Termination Agreement.

68. By virtue of its intentional concealment, NovaBay willfully, intentionally and in reckless disregard of its possible results violated Cal.Civ.Code §3294(a).

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Pathogenics prays that this Court:

1. Enter judgment against Defendant and compel Defendant to register the offer and sale of the Plaintiff's Shares on the S-3 Registration Statement;

2. Preliminarily enjoin Defendant from registering the offer and sale of its common stock on either a Form S-1 or S-3 registration statement without also registering the offer and sale of the Plaintiff's Shares thereon;

3. Award damages to Plaintiff for the full value of the Shares under the Termination Agreement;

4. Award multiple damages to Plaintiff for the injury it suffered at the hands of Defendant under M.G.L. ch 93A §11 and the common law;

5. Award exemplary damages to Plaintiff for the injury it suffered at the hands of Defendant under Cal.Civ.Code §3294(a);

6. Award attorney fees, costs and pre-judgment interest to Plaintiff under M.G.L. ch 93A §11;

7. Award reasonable attorneys' fees and costs to Plaintiff under the Termination Agreement; and

8. Grant Plaintiff such other and further relief as this Court may deem just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS.

PATHOGENICS, INC.

By its attorney,

*/s/ Frederic P. Zotos*

Frederic P. Zotos (BBO No. 565308)
28 Old Coach Road
Cohasset, MA 02025
(781) 836-4295

Dated: July 6, 2009